**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVSION**

| | | |
|---|---|---|
| **ROBERT MOORE**, *et al.*, on behalf of themselves and others similarly situated, | ) ) ) | Case No. 2:23-cv-01991-WSS |
| Plaintiffs, | ) ) | Judge William S. Stickman IV |
| vs. | ) ) | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S** |
| **CONSOL PENNSYLVANIA COAL COMPANY LLC,** | ) ) ) | **AMENDED MOTION FOR AN ORDER REQUIRING PLAINTIFFS' COUNSEL TO CEASE AND DESIST FROM** |
| Defendant. | ) ) ) | **IMPROPER SOLICIATIONS** |

## INTRODUCTION

Defendant's Amended Motion for an Order Requiring Plaintiffs' Counsel to Cease and Desist from Improper Solicitations ("Amended Motion") is nothing more than an orchestrated strategy that is routinely employed by Defendant's Counsel to interfere with Plaintiffs' Counsel's constitutionally protected speech and discourage participation by potential opt-in plaintiffs.[1] Despite Defendant's unfounded accusations of "improper" and "unethical" conduct, courts have expressly recognized that in FLSA collective actions, Plaintiffs' Counsel have both a protected right and a legitimate need to reach out to potential opt-in plaintiffs. Thus, courts typically only restrict precertification communications in collective actions to prevent actual or potential egregious abuse – neither of which are even close to occurring here.

Ironically, although Defendant's Counsel pretends to be offended by the fact that Plaintiffs' Counsel exercised their right to engage in constitutionally protected speech, when it suited his

---

[1] *See e.g., Bamgbose v. Delta-T Group, Inc.*, Case No. 2:09-cv-00667, ECF Nos. 41, 43 (E.D. Pa. May 7, 2019); *Griffin v. Denmark*, Case No. 18-cv-00979, ECF No. 41 (N.D. Ill. August 17, 2018); *Avalos v. Papa John's International, Inc.*, Case No. 8:18-cv-00871, ECF No. 40 (S.D. Cal. July 11, 2018) (attached as **Exhibit A**). In fact, this not the first time that Defendant's Counsel has used this tactic against Plaintiffs' Counsel. *See* Draher Decl. at ¶ 14 (attached as **Exhibit B**).

clients, Defendant's Counsel has advocated that precertification communications are both ethically permissible and consistent with the majority rule.[2] This hypocrisy illustrates not only the frivolousness of Defendant's Amended Motion, but also that it was filed for an improper purpose. Defendant's extraordinary request for a communications ban must therefore be denied.

## STATEMENT OF FACTS

Plaintiffs' Counsel represents underground coal mining employees in several class and collective action cases for unpaid overtime. The allegations in those cases are like the allegations in this case. Specifically, in those cases, the plaintiffs allege that they were not paid for time spent changing in and out of safety clothing, gathering and returning safety equipment, and gathering and returning other works tools and equipment. *See* Draher Decl., ¶ 5.

Based on information that Plaintiffs' Counsel learned in their other coal mining cases, they started investigating potential unpaid overtime claims against Consol Energy, Inc. ("Consol") around the middle of October 2023. *Id.* at ¶ 6. As part of that investigation, Plaintiffs' Counsel conducted company research on Consol and discovered that Consol maintains its principal place of business in Canonsburg, Pennsylvania and owns several underground mines in Pennsylvania. *Id.* at ¶ 7. Plaintiffs' Counsel therefore concluded that any lawsuit against Consol would be filed in Western District of Pennsylvania. *Id.* at ¶ 8. Plaintiffs' Counsel were admitted to the Western District of Pennsylvania in 2019. *Id.* at ¶ 3.

As part of their investigation, on November 8 and 9, 2023, Plaintiffs' Counsel mailed a letter to individuals who likely worked for Consol as coal miners (the "Letter"). *Id.* at ¶ 9, Exhibit 1. The Letter truthfully explained that Plaintiffs' Counsel were investigating a potential unpaid overtime

---

[2] *See Bamgbose*, Case No. 2:09-cv-00677, ECF No. 50 (attached as **Exhibit A**). It is worth noting that in *Bamgbose* case, the parties ultimately agreed that ***both*** sides could engage in precertification communications. *Bamgbose*, ECF No. 66 at p. 1 (attached as **Exhibit A**).

claim against Consol. *Id.* The Letter did not say that the recipients had a claim against Consol. Rather, it explained that "[c]ompanies with hourly mining employees *sometimes* do not pay for the time spent changing into or out of protective gear and gathering and or returning safety equipment and tools that are required. This can result in overtime violations in weeks where 40 or more hours are worked." *Id.* (emphasis added). The Letter stated that "[i]f you are or have been employed as a full-time hourly employe for Consol Energy during the last three years, we would like to talk to you to make sure you were paid all the money you earned." *Id.*

In accordance with the applicable rules of professional conduct, the Letter contained the conspicuous phrase "Advertising Material" at the beginning and end of the Letter and contained the conspicuous phrase "ADVERTISING MATERIALS" on the outside of the envelope. *Id.* at ¶ 9, Exhibit 1. It also listed Plaintiffs' Counsel's business address in ***Ohio*** and expressly stated that Plaintiffs' Counsel "are admitted to practice in ***Ohio***." *Id.* (emphasis added).

Based on information that Plaintiffs' Counsel received during their investigation, Plaintiffs' Counsel decided to file the instant lawsuit on November 14, 2023. The lawsuit was subsequently filed on November 17, 2023. *Id.* at ¶¶ 10-11.

On December 8, 2023, Defendant's Counsel, Gerald Maatman, sent an email to Plaintiffs' Counsel. *Id.* at ¶ 13. In the email, he attached a letter demanding that Plaintiffs' Counsel stop sending advertising letters to current and/or former employees of Consol Energy and/or its affiliates. *Id.* Even though Plaintiffs' Counsel had not mailed any letters since November, Plaintiffs' Counsel responded "No" to Mr. Maatman's email because this was not the first time that Mr. Maatman has threatened Plaintiffs' Counsel with action if they did not give into his request to stop engaging in protected and permitted precertification communications with potential opt-in plaintiffs. *Id.* at ¶ 14.

On January 8, 2024, Defendant filed a Motion for an Order Requiring Plaintiffs' Counsel to Cease and Desist from Improper Solicitations ("Defendant's Motion"). ECF Nos. 34, 36. On January 19, 2024, Plaintiffs' Counsel sent Defendant's Counsel an email informing them that the letter that was referenced in Defendant's Motion and attached to Mr. Maatman's declaration was incomplete because it was missing the bottom portion of the Letter that provided Plaintiffs' Counsel's business address in Ohio and affirmatively stated that Plaintiffs' Counsel are admitted to practice in Ohio. Draher Decl., ¶ 16. Plaintiffs' Counsel further explained that since the version of the letter that was cited in Defendant's Motion was incomplete, factual statements and legal arguments made in Defendant's Motion regarding Plaintiffs' Counsel's purported holding out as being admitted in states other than Ohio were misleading and frivolous. *Id.* Plaintiffs' Counsel attached a copy of the complete Letter to the email and requested that Defendant's Counsel immediately notify the Court that Defendant filed a manipulated version of the letter. *Id.*

After several follow up emails and a telephone call to Defendant's Counsel, Defendant filed a Motion to Withdraw Defendant's Motion on January 25, 2024. ECF No. 52. Defendant then filed the present Amended Motion. ECF Nos. 53, 54.

Notably, Defendant's initial Motion resulted in a nationally published article with the headline "Attys Violating Solicitation Rules In OT Suit, Energy Co. Says." Draher Decl., ¶ 19, Exhibit 3. That article referenced certain false accusations that were contained in Defendant's Motion. For example, the article stated that "Counsel for plaintiffs has made clear that they will continue broadcasting plaintiffs' unproven and baseless accusations as part of an aggressive and improper campaign to attempt to enhance their leverage against defendant in these proceedings prior to any request for conditional certification." *Id.* That is a false statement. Plaintiffs' Counsel never communicated to

Defendant's Counsel that they would continue an "aggressive" or "improper campaign" to "enhance" Plaintiffs' leverage in this case. *Id.* at ¶ 19.

Plaintiffs' Counsel is committed to the highest ethical standards. *Id.* at ¶ 4. As part of that commitment, Plaintiffs' Counsel takes active steps to ensure that their communications with prospective clients comply with all applicable rules of professional conduct. *Id.* These active steps include, but are not limited to, preparing a fifty-state survey of the applicable states' ethics rules, consulting with ethics counsel, and submitting proposed advertising letters to the state bars, if required. *Id.* It is worth noting that a similar letter was recently approved by the State Bar of Texas. *Id.* at ¶ 12, Exhibit 2.

## LAW AND ARGUMENT

### A.    Plaintiffs' Counsel has an ethical obligation to perform a prelitigation investigation.

Pursuant to Federal Civil Rule 11, an attorney's signature on a pleading certifies that the factual contentions contained in the pleading "have evidentiary support" or "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. Thus, there can be no dispute that Plaintiffs' Counsel had a Rule 11 obligation to conduct an investigation before filing this lawsuit. *See Haniotakis v. Nassan (In re Zion)*, 727 F. Supp.2d 388, 411 (W.D. Pa. 2010)("An attorney must conduct a reasonable inquiry before filing a lawsuit, and cannot pursue the action unless he or she reasonably believes that facts exist to support the allegations.").

The Letter makes clear that Plaintiffs' Counsel were "investigating" a potential unpaid overtime claim. Defendant's accusation that the Letter is misleading because Plaintiffs' Counsel were "clearly preparing" to file the lawsuit when the Letter was mailed is based on nothing more than speculation, if not simply oxymoronic as investigating and preparing for litigation

substantially overlap. *See* ECF No. 54 at p. 8.[3] The Letter was mailed days before Plaintiffs'

Counsel decided to file the lawsuit and over a week before the lawsuit was filed. Draher Decl., ¶¶

10-11. Even if Plaintiffs' Counsel was "preparing to file the lawsuit" when the Letter was mailed

(which they were not), Plaintiffs' Counsel Rule 11 obligation was not somehow extinguished when

the decision to file the lawsuit was made.

      **B.**      **The Letter is not misleading. It is the type of communication that courts have held are constitutionally protected and can only be restricted upon a showing of actual or potential egregious abuse.**

          1.    <u>Defendant's argument that the Letter is misleading is based purely on speculation, which does not support any restraint on Plaintiffs' Counsel's constitutionally protected speech.</u>

      Plaintiffs' Counsel's precertification communications to potential opt-in plaintiffs are

protected by the First Amendment. *See Lewis v. Huntington Nat'l Bank*, Case No. C2-11-CV-

0058, 2011 U.S. Dist. LEXIS 156175, at *9-10 (S.D. Ohio Oct. 24, 2011). The Supreme Court has

made clear that courts have limited authority to restrict precertification communications between

plaintiffs' counsel and potential class members. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101

(1981)(holding that the district court abused its discretion in banning precertification

communications). Courts must exercise their discretion to restrain precertification

communications "sparingly given the significant First Amendment concerns associated with any

such restraint." *Bobyrk v. Durand Glass Mgf. Co.*, Civil No. 12-cv-5360 (NLH/JS), 2013 U.S.

Dist. LEXIS 145758, at *9 (Dist. N.J. Oct. 9, 2013); *see also Maddox v. Knowledge Learning*

*Corp.*, 499 F. Supp.2d 1338, 1343 (N.D. Ga. 2007)(explaining that courts are "mindful not to run

afoul of plaintiffs' and their lawyers' free speech rights in their restrictions of pre-notice

---

[3] Citations to pages numbers of ECF filings refer to the page number that appears on the docket information located at the top of the filed document.

communications.");[4] *Frye v. Baptist Mem. Hosp., Inc.*, No. 07-2708 Ma/P, 2008 U.S. Dist. LEXIS 41511, at *15 (W.D. Tenn. May 20, 2008)(same).

The Supreme Court has instructed that any limitations on precertification communications must be "based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101. Under this standard, the moving party must provide "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* at 102, n. 16. And any order limiting precertification communications must be drawn to limit "speech as little as possible." *Id.* at 102. The Supreme Court recognized that "in many cases there will be no problem [with precertification communications] requiring remedies at all." *Id*. at 104.

Courts typically only "restrict communications in collective actions where the facts of actual or potential abuses are egregious in nature." *Cowan v. Nationwide Mut. Ins. Co.*, Case No. 2:19-cv-1225, 2019 U.S. Dist. LEXIS 164312, at *7-8 (S.D. Ohio Sept. 25, 2019); *Laichev v. JBM, Inc.*, Case No. 1:07cv802, 2008 U.S. Dist. LEXIS 132074, at *11 (S.D. Ohio Apr. 11, 2008); *see also Gulf Oil*, 452 U.S. at 104 (explaining that a communication ban is a "serious restraint[] on expression" and one in which must be "justified by a likelihood of serious abuses."). "This is a particularly difficult standard to meet" since the plaintiffs' counsel have a "legitimate need" to reach out to potential-opt in plaintiffs to obtain "information about the merits of the case" and uncover "information that may be relevant to whether or not a class should be certified." *Velasquez v. Osana Cleaning Corp.*, 23-cv-04257 (NJC)(JMW), 2023 U.S. Dist. LEXIS 207686, *11 (E.D.

---

[4] While the court in *Maddox* required that plaintiffs' counsel modify certain statements on their website, it held that "it would be an abuse of discretion [for the court] to totally proscribe plaintiffs in a Section 216(b) collective action from communicating with potential class members through a website or other means prior to conditional certification." *Id.* at 1344. Importantly, none of the statements that the court required be modified are like those made in the Letter.

N.Y. Nov. 20, 2023)(quoting *Shibetti v Z. Rest., Diner & Lounge, Inc.*, No. 18-cv-856 (BMC), 2021 U.S. Dist. LEXIS 83983, *16-17 (E.D. N.Y. May 3, 2021))[5]; *see also Gulf Oil*, 452 U.S. at 101 (explaining that the district court's order banning the precertification communications "interfered with [plaintiffs' and their counsel's] efforts to inform potential class members of the existence of [the] lawsuit …[and] . . . made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent.").

In its Amended Motion, Defendant cherry-picks one statement from *Gulf Oil* to support its argument that the Court should ban Plaintiffs' Counsel's communications with potential opt-in plaintiffs. *See* ECF No. 54 at p. 8.[6] But Defendant intentionally omits any discussion of the Supreme Court's specificity requirement and instruction that at any limitation on communication be "carefully drawn" to "limit speech as little as possible." *Gulf Oil Co.*, 452 U.S. at 101-102. The reason for this intentional omission is clear – Defendant has not met its burden of establishing "a particular and specific demonstration of fact" of potential or actual egregious abuse that justifies the requested communication ban. *Gulf Oil*, 452 U.S. at 102, n.2, 104; *Cowan*, 2019 U.S. Dist. LEXIS 164312, at *7-8; *Laichev*, 2008 U.S. Dist. LEXIS 132074, at *11.

Instead, Defendant relies on pure speculation and baseless accusations, which are insufficient to meet the *Gulf Oil* standard. *See Amaraut v. Sprint/United Mgmt. Co.*, Case No. 3:19-cv-411-WQH-AHG, 2020 U.S. Dist. LEXIS 64349, at *20 (S.D. Cal. April 10, 2020)(citing cases

---

[5] The court in *Shibetti* addressed plaintiffs' counsel's post-notice communication to potential opt-in plaintiffs and plaintiffs' counsel's direct telephone solicitations to potential opt-in plaintiffs. In doing so, the court explained that "courts are reluctant to regulate letters to potential plaintiffs, reasoning that these letters are protected by *Gulf Oil* and the First Amendment." *Id.* at *17.

[6] Citing to *Gulf Oil* and stating that "the Supreme Court has explained that a court may enter 'an order limiting communications between parties and potential class members.'"

where courts refused to limit communications based on speculation and stating that "[d]efendant's reliance on speculation is exacerbated by its intentional omission of *Gulf Oil's* specificity requirement from its briefing."). Specifically, Defendant argues – without any factual support – that the Letter is misleading because Plaintiffs' Counsel were "clearly preparing to file the Complaint" when the Letter was mailed. ECF No. 54 at p. 8. This conclusory argument is supported only by rank speculation, backed by absolutely zero evidence.

The Letter was sent as part of Plaintiffs' Counsel's prelitigation investigation days before Plaintiffs' Counsel decided to file the lawsuit and over a week before the lawsuit was filed. Draher Decl., ¶¶ 10-11. Thus, considering the message (that Plaintiffs' Counsel were investigating a potential claim that was not yet filed) and the context in which it was sent (as part of Plaintiffs' Counsel's prelitigation investigation), there is absolutely no basis to conclude that the Letter was misleading. *See Amaraut*, 2020 U.S. Dist. LEXIS 64349, at *10-11 (S.D. Cal. April 10, 2020)(explaining that whether a communication is misleading depends on "the overall message … the context in which [it was] made" and its "effect."). Defendant's argument that the Letter is misleading must therefore be rejected.

2.  <u>Defendant's cited cases highlight the frivolousness of Defendant's request</u>.

In its Amended Motion, Defendant cites *Laichev* as an example where a district court "ordered plaintiffs' counsel to cease or substantially modify improper (and unethical) communications to potential plaintiffs." ECF No. 54 at p. 9, citing 2008 U.S. Dist. LEXIS 132074. Defendant's citation to this case is puzzling because it does not support Defendant's request for a communication ban. Rather, it highlights why Defendant's Amended Motion must be denied.

In *Laichev*, the defendant, in an FLSA collective action, requested that the court enter an order prohibiting plaintiffs' counsel from making statements about the case on the internet.

*Laichev.*, 2008 U.S. Dist. LEXIS 132074, at *1-2. The court denied defendant's request for a communication ban. Importantly, the court explained that courts "must give more deference to communications between [p]laintiffs' counsel and potential [opt-in] plaintiffs" in FLSA collective actions. *Id.*, at *11.

> In order for [p]laintiffs to assert a collective action, [p]laintiffs must gain consent of other similarly situated persons. ***A total ban on communications to potential [opt-in] plaintiffs would harm potential [opt-in] plaintiffs who may never be informed of the existence of the litigation***. Likewise, without communication potential [opt-in] plaintiffs would not be provided with adequate information to allow them to decide whether to consent to joining the action.

*Id.* (emphasis added). The court further explained that district courts "tend only to restrict communications in collective actions where the facts of actual or potential abuse are egregious in nature in a particular case." *Id.* The court cautioned that any limitation on communications "should be of the least restrictive form necessary." *Id.* Notably, the court did not order plaintiffs' counsel to "cease" or "substantially modify" plaintiffs' counsel's communications, nor did it find that plaintiffs' counsel's communications were unethical as suggested by Defendant in its Amended Motion.[7] *See* ECF No. 54 at p. 9.

Defendant's citation to *McKee v. Audible, Inc.* does not support Defendant's extraordinary request. ECF No. 54 at p. 9, citing Case No. CV 17-1941-GW(EX), 2018 U.S. Dist. LEXIS 179978 (C.D. Cal. Apr. 6, 2018). *McKee* did not involve the type of precertification communication at issue here. Instead, it involved the defendant's precertification communications with class members that interfered with their right to participate in the case. *McKee*, 2018 U.S. Dist. LEXIS

---

[7] Instead, the court ordered that plaintiffs' counsel make one single clarification on the website relating to potential plaintiffs' alternatives to opting-in to the case. *Id.*, at *15-16.

179978, at *7-8. The cases listed in *McKee*, and referenced by Defendant in its Amended Motion, likewise involve the defendants' coercive and misleading attempts to interfere with the putative class members participation in a class action. ECF No. 54 at p. 9; *McKee*, 2018 U.S. Dist. LEXIS 179978, at *11-12; ECF No. 54 at p. 9. For example, in *Wright v. Adventures Rolling Cross Country, Inc.*, the defendant sent an email to class members telling them that if they participated in the class action their "past transgressions will become very public" and they will be "left with tattered reputations and substantial legal bills." No. 12-0928 EMC, 2012 U.S. Dist. LEXIS 83505, at *5 (N.D. Cal. June 15, 2012). In *Guifu Li v. A Perfect Day Franchise, Inc.*, the defendant obtained opt-out forms from class members in mandatory one-on-one meetings and failed to provide the forms to class members in their primary language or did not let them take the forms home. 270 F.R.D. 509, 518 (N.D. Cal. 2010). And in *Camp v. Alexander*, class members opted out because of a letter defendant sent to them that stated that the class action "was motivated by greed and other improper factors" and "could result in the closure" of the company. 300 F.R.D. 617, 620 (N.D. Cal. 2014).

### C.    The Court should reject Defendant's claim that the Letter constitutes *de facto* notice.

#### 1.    A precertification solicitation is not *de facto* notice.

Plaintiffs agree that this Court has discretion to facilitate notice to the potential opt-in plaintiffs in this case. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169-170 (1989).[8] But the fact that this Court has such discretion – which it has not yet exercised – does not strip Plaintiffs

---

[8] The Supreme Court in *Hoffman-LaRoche* did not hold or conclude that precertification communications outside of court-facilitated notice are improper. In fact, in *Hoffman-LaRoche*, the plaintiffs had filed over 400 prenotice consent to join forms that were obtained through a advertising letter. *See id.* at 168.

or their Counsel of their right to engage in precertification communications with potential opt-in plaintiffs.[9] *See West v. Mando Am. Corp.*, Case No. 3:08-cv-570-WKW[WO], 2008 U.S. Dist. LEXIS 81296, at *4 (M.D. Ala. Oct. 2, 2008)(explaining that plaintiffs are not required to obtain court approval before seeking to locate potential opt-in plaintiffs); *Taylor v. CompUSA, Inc*, Civil Action File No.1:04-CV-718-WBH, 2004 U.S. Dist. LEXIS 14520, at *12 (N.D. Ga. June 29, 2004)(agreeing that "it is not the court's role to prohibit plaintiffs" in FLSA collective actions from gathering pre-notice consents.); *Russo v. Joamar, Inc.*, No. LA CV 20-3939 JAK (MRWx), 2021 U.S Dist. LEXIS 45289, at *27 (C.D. Cal. Mar. 8, 2021)(rejecting defendant's request that plaintiffs' counsel be banned from communicating with potential opt-in plaintiffs outside of court-authorized notice because "lawyers are perfectly entitled to reach out to potential collective members …without first seeking court approval.").

An advertising letter does not constitute *de facto* notice. *See Frye*, 2008 U.S. Dist. LEXIS 41511, at *8, 17 (refusing the issue communication ban despite defendant's argument that solicitation letter constituted *de facto* notice); *Lusk v. Serve U Brands, Inc.*, No. 6:17-cv-06451-MAT, 2018 U.S. Dist. LEXIS 99978, at *24, 30 (W.D. NY June 14, 2018)(refusing to strike consents obtained as a result of precertification communications despite defendants' argument that such communications usurped court's "power to monitor the notice process."). In fact, courts recognize that precertification communications with potential opt-in plaintiffs are permissible in FLSA collective actions unless the communication "contradicts a court notice, is misleading or improper." *Cowan*, 2019 U.S. Dist. LEXIS 164312, at *7 (quoting *Heibel v. U.S. Bank Nat'l Ass'n*, Case No. 2:11-CV-593, 2012 U.S. Dist. LEXIS 139510, at *6 (S.D. Ohio Sept. 27, 2012)); *Goody*

---

[9] Plaintiffs have filed a Motion for Court-Authorized Notice. ECF Nos. 37, 38. If the Court grants that Motion, Plaintiffs' Counsel agree that, to avoid confusion, they would not send advertising letters to potential opt-in plaintiffs.

*v. Jefferson Cnty.*, No. Case No. CV-09-437-E-BLW, 2010 U.S. Dist. LEXIS 101212, at *5-6 (Dist. Idaho Sept. 23, 2010)(collecting cases); *Struck v. PNC Bank N.A.*, Case No. 2:11-CV-00928, 2013 U.S. Dist. LEXIS 19444, at *17 (S.D. Ohio Feb. 13, 2013)(quoting *Heibel,* 2012 U.S. Dist. LEXIS 139510, at *6).

Importantly, courts consistently recognize that the FLSA "encourage[s] early communication" with potential opt-in plaintiffs "because the commencement of a collective action under § 216(b) does not toll the statute of limitations period" for potential opt-in plaintiffs until they affirmatively join the case. *Cowan*, 2019 U.S. Dist. LEXIS 164312, at *7-8 (quoting *Heibel*, 2012 U.S. Dist. LEXIS 139510, at * 7); *see also Laichev*, 2008 U.S. Dist. LEXIS 132074, at *11; *Struck¸* 2013 U.S. Dist. LEXIS 19444, at *18. Thus, "[a] total ban on communications to potential plaintiffs would harm potential plaintiffs who may never be informed of the existence of the litigation." *Cowan*, 2019 U.S. Dist. LEXIS 164312, at *8 (citing *Laichev*, 20008 U.S. Dist. LEXIS 132074, at *11).

Defendant's argument that the Letter "amounts to *de facto* notice to potential Collective Action Members of the pending FLSA collective action" is not supported by the facts or the law. *See* ECF No. 54 at p. 7. There was no "pending FLSA collective action" when the Letter was mailed. As such, the Letter specifically explained that Plaintiffs' Counsel were "investigating" a possible claim. Draher Decl., ¶¶ 9-11. Thus, an argument that the Letter provided "notice" of a collective action is nonsensical. Moreover, as discussed above, courts routinely hold that precertification communications in FLSA collective are permissible and do not require court approval. Defendant's argument that the Letter is improper *de facto* notice must therefore be rejected.

2.  <u>Defendant's cited cases do not support Defendant's extraordinary and unsupported request for a communication ban.</u>

In its Amended Motion, Defendant cites to *Taylor* to support is argument that Plaintiffs' Counsel "are not permitted unilaterally to send unsolicited notices regarding the case to putative FLSA class members not yet parties to an action conditionally certified by the Court." ECF No. 54 at p. 7, citing 2004 U.S. Dist. LEXIS 14520, at *11. Defendant's citation to this case is misleading.

In *Taylor*, the court expressly acknowledged that plaintiffs "are not required to rely on court-facilitated notice to notify potential opt-in plaintiffs of the action." *Taylor*, 2004 U.S. Dist. LEXIS 14520, at *11. The court also expressly acknowledged that "it is not the court's role to prohibit" plaintiffs in FLSA collective actions from gathering pre-notice consent to join forms.[10] *Id.*, at *12. Accordingly, the court did not hold that plaintiffs and their counsel were prohibited from engaging in precertification communications with potential opt-in plaintiffs. Instead, the court only ordered that plaintiffs not include certain conclusory statements in its communications.

Defendant also cites to *Bouder v. Prudential Fin., Inc.*, *Cintron v. Hershey P.R., Inc.*, and *Sandoval v. Serco, Inc.* *See* ECF No. 54-1 at pgs. 7-8. These cases are factually distinguishable and inconsistent with the majority rule. *See Frye,* 2008 U.S Dist. LEXIS 41511, at * 14 ("to the extent that *Bouder* can be read to stand for the proposition that a complete ban on pre-certification communications with potential class members is appropriate even in the absence of specific findings of abuse, such a rule would be entirely inconsistent with *Gulf Oil*."); *Hinterberger v.*

---

[10] The court took issue with certain statements that the court found to be presented "as [legal and factual] conclusions rather than plaintiffs' contentions. As such, the court instructed plaintiffs to not include certain statements that it found to be misleading in future communications. *Id.*, at *12, n. 7. As discussed above, there are no misleading statements in the Letter. Likewise, there are no statements that can be interpreted to be presented as factual or legal conclusions.

*Catholic Health Sys.*, 08-CV-380S, 2009 U.S. Dist. LEXIS 97944 (W.D. NY Oct. 20, 2009) *33-34 (referring to *Cintron* as an "aberration.").

In *Bouder*, the court set a deadline for plaintiffs to file a motion for conditional certification. Instead of filing their motion by the court-ordered deadline, plaintiffs' counsel informed defendant's counsel of their intent to send a three-page letter and consent to join form to the potential opt-in plaintiffs. *Bouder*, Civil Action No. 06-CV-4359 (DMC), 2007 U.S. Dist. LEXIS 83338, at * 2-3 (Dist. N.J. Nov. 8, 2007). Among other things, the *Bouder* letter represented that:

- "In the past several years, similar overtime cases in other states have resulted in multi-million dollar settlements…"

-  The defendant failed to pay certain employees overtime pay, which they were entitled to regardless of the number of hours worked.

- The recipient must complete the enclosed consent to join form or lose their right to bring their claim.[11]

The court was offended that plaintiffs' counsel "flout[ed]" its scheduling order and ultimately concluded that the letter was misleading. *Id.* at *4.

And in *Sandoval*, the plaintiffs' counsel published a website that contained a link to a consent to join form and sent an email that stated, "Please share this website with anyone you know who worked for Serco so they can complete the consent form linked at the bottom to join this case. Every person who joins makes the case stronger and pushes Serco to settle more quickly before more people join." Case No. 4:18-CV-01562-JAR, 2019 U.S. Dist. LEXIS 79286, at * 5 (E.D. Mo. May 10, 2019).

The Letter is nothing like the communications in Defendant's cited cases. It did not "flout" this Court's scheduling order. On the contrary, the Letter was sent before this lawsuit was filed

---

[11] The letter at issue in *Bouder* is attached as **Exhibit C**.

and before Plaintiffs' Counsel decided to file a case at all. Draher Decl., ¶¶ 9-11. Moreover, the Letter is not misleading. It does not contain any statements like those in Defendant's cited cases.

### D. The Letter does not violate ethics rules.

Defendant falsely accuses Plaintiffs' Counsel of violating the Kentucky, West Virginia, and Virginia Rules of Professional Conduct. *See* ECF No. 54 at pgs. 9-10.[12] Defendant's false accusation hinges on ethics rules that have nothing to do the solicitation of prospective clients and ignores the fact that the Letter made clear that Plaintiffs' Counsel were admitted to practice in Ohio. As outlined below, the Letter strictly complied with the solicitation rules. The Court should therefore reject Defendant's inflammatory accusations.

### 1. The Letter does not violate the Kentucky Rules of Professional Conduct.

The Court should reject Defendant's baseless argument that Plaintiffs' Counsel violated the Kentucky Rule of Professional Conduct 3.130(5.5)(b). *See* ECF No. 54 at p. 9-10. That rule provides that a lawyer who is not admitted to practice in Kentucky may not "establish or maintain an office or other presence in [Kentucky] for the practice of law; or hold out to the public or otherwise represent that the lawyer is admitted to practice law in [Kentucky]." Ky. R. Supp. Ct. 3.130(5.5)(b).

Plaintiffs' Counsel did not violate Rule 3.130(5.5)(b). They do not maintain (or purport to maintain) an office or presence in Kentucky. Likewise, they do not hold themselves out as being admitted to practice law in Kentucky. On the contrary, Plaintiffs' Counsel expressly stated in the Letter that its "attorneys are admitted to practice in ***Ohio***." Draher Decl., ¶ 9, Exhibit 1 (emphasis added). Plaintiffs' Counsel also listed their business address in ***Ohio*** in the Letter. *Id.* (emphasis added).

---

[12] Defendant does not argue that the Letter violated the Pennsylvania Rules of Professional Conduct.

Ignoring the plain text of Rule 3.130(5.5)(b), Defendant relies on comment 4. ECF No. 54 at pgs. 9-10. According to Defendant, comment 4 stands for the proposition that "advertising in media specifically targeted to Kentucky residents or initiating contact with Kentucky residents for solicitation purposes could be viewed as conduct in Kentucky in violation of paragraph (b)." *Id.* at pgs. 6-7. But, as usual, Defendant intentionally omits critical context that is contrary to its argument.

Comment 4 states, in its *entirety*, that:

Other than as authorized by law or this Rule, a lawyer who is not admitted to practice generally in this jurisdiction violates paragraph (b) if the lawyer establishes or maintains an office in this jurisdiction for the practice of law. A lawyer may violate paragraph (b) by establishing or maintaining an office even if the lawyer is not physically present here. Such a lawyer must not hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction. See Rules 7.15 and 7.50. **For example,** advertising in media specifically targeted to Kentucky residents or initiating contact with Kentucky residents for solicitation purposes could be viewed as conduct in Kentucky in violation of paragraph (b). See also Comment [20].

Ky. R. Supp. Ct. 3.130(5.5)(b), comment 4 (emphasis added). When this rule is read in its entirety, it becomes crystal clear that the cherry-picked portion of comment 4 that Defendant cites does not mean what Defendant urges. Rather, it is nothing more than an example of how an attorney might "hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction." But as discussed above, Plaintiffs' Counsel did not hold out to the public or otherwise represent that they were admitted in Kentucky. Thus, Defendant's argument that the Letter violated Rule 3.130(5.5)(b) must be rejected.

Moreover, comment 4 explicitly references comment 20, which states: "Whether and how lawyers [who are admitted to practice in other jurisdictions] may communicate the availability of their services to prospective clients in this jurisdiction is governed by Rules 7.01 to 7.50." Ky. R. Supp. Ct. ("SCR") 3.130(5.5)(b), comment 20. "Whether and how" lawyers solicit prospective

clients is governed by Rule 4.5. Ky. R. Sup. Ct. 3.130(4.5). This rule is former Rule 7.09 and is therefore part of the rules referenced in comment 20 of Rule 3.130(5.5). *See* https://www.kybar.org./page/advertisingrules ("Contact with potential clients (formerly SCR 3.130(7.09) is now SCR 3.130(4.5) Solicitation of clients"). The Letter strictly complied with this Rule.

Rule 3.130(4.5) requires that all written solicitations to prospective clients include the words "Advertising Material" on the outside of the envelope (if any) and "at the beginning and ending of any recorded or electronic communication…" Ky. R. Sup. Ct. 3.130(4.5)(3). The envelope containing the Letter was conspicuously marked with the words "ADVERTISING MATERIALS" on the outside. Draher Decl., ¶ 9. It also contained the words "Advertising Material" at the beginning and end of the Letter. *Id*., Exhibit 1.

    2.  <u>The Letter does not violate the West Virginia or Virginia Rules of Professional Conduct.</u>

        *a.  The Rules of Professional Conduct cited by Defendant do not apply to an attorney's communication to prospective clients.*

The Court should likewise reject Defendant's baseless argument that Plaintiffs' Counsel violated the West Virginia and Virginia Rules of Professional Conduct. *See* ECF No. 54 at p. 10. As discussed below, the ethics rules that Defendant boldly claims Plaintiffs' Counsel violated do not apply to an attorney's communications to ***prospective clients***. *See* W.Va. R. Prof. Cond. 5.5(c)(3), comment 21; Va. R. Sup. Ct. 5.5(d)(4)(iii), comment 21. Instead, West Virginia Rule of Professional Conduct 5.5(f) and Virginia Rule of Professional Conduct 5.5(d)(3) apply only after a prospective client becomes a client. *See* W.Va. R. Prof. Cond. 5.5(f) ("lawyer must make an affirmative disclosure to the ***client*** that the lawyer is not admitted to practice in West Virginia.");

Va. R. Sup. Ct. 5.5(d)(3) ("A Foreign Lawyer shall inform the **client** … that the lawyer is not admitted to practice law in Virginia.").

Defendant admits that at the time the Letter was mailed, none of its recipients were clients of Plaintiffs' Counsel.[13] And even if these rules did apply (which they do not), Plaintiffs' Counsel expressly informed all recipients that there were only admitted in **Ohio** and that their business address was in **Ohio**.

> b. *The Letter complied with the West Virginia and Virginia Rules of Professional Conduct regarding the solicitation of clients.*

Just like the Kentucky rules, the West Virginia and Virginia Rules of Professional Conduct make clear that whether and how an attorney communicates their services to prospective clients is governed by the applicable solicitation rules (not the rules cited by Defendant). *See* W.Va. R. Prof. Cond. 5.5 (c)(3), comment 21; Va. R. Sup. Ct. 5.5(d)(4)(iii), comment 21. The West Virginia Rules of Professional Conduct and the Virginia Rules of Professional Conduct relating to solicitation of clients both provide: "Every written, recorded or electronic solicitation from a lawyer shall conspicuously include the words "ADVERTISING MATERIAL" on the outside envelope, if any, and at the beginning and ending of any recorded or electronic solicitation…" W.Va. R. Prof. Cond.7.3; Va. R. Sup. Ct. 7.3. As discussed above, the Letter strictly complied with both rules.

**E.    The Court should deny Defendant's request to strike consent to join forms.**

Defendant's arguments that the Letter is improper or somehow justifies a communication ban are not factually or legally supported. Accordingly, there is no basis for the Court to grant Defendant's absurd request to strike any consent to join forms and interfere with the rights of the

---

[13] *See* ECF No. 54 at p. 9 (arguing that the Letter was an attempt to "round up participants" in this case).

opt-in plaintiffs.[14] *See Cowan*, 2019 U.S. Dist. LEXIS, at *13 (denying defendant's request to strike consent forms and interfere with the rights of the opt-in plaintiffs); *Lusk*, 2018 U.S. Dist. LEXIS, at *30 (denying defendant's request to strike consent forms where defendant failed to show plaintiffs' counsel engaged in improper precertification communications).

## **CONCLUSION**

Defendant's Amended Motion is nothing more than an improper attempt to interfere with Plaintiffs' Counsel's constitutionally protected speech and discourage participation by potential opt-in plaintiffs this case. The law is clear – this Court's discretion to restrict this protected speech is limited and can only be exercised upon a showing of actual or potential egregious abuse. Moreover, any order limiting Plaintiffs' Counsel's protected precertification communications must be carefully drawn to limit speech as little as possible. As discussed above, Defendant has failed to show any abuse, let alone egregious abuse. Defendant's Amended Motion must therefore be denied.

Furthermore, given that Defendant's Amended Motion contained false and inflammatory accusations of Plaintiffs' Counsel's purported improper and unethical conduct, which were reported in a nationally published news article, Plaintiffs respectfully request that the Court affirmatively hold that Plaintiffs' Counsel's precertification communications were both legally permissible and compliant with the applicable rules of professional conduct.

---

[14] Defendant fails to tell the Court that even when courts have struck consent forms, they tolled the statute of limitations for the opt-in plaintiffs and held that their consent forms could be refiled after the issuance of a curative communication or court-authorized notice. *See Sandoval*, 2019 U.S. Dist. LEXIS 79286, at * 20-21.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Shannon M. Draher*

Shannon M. Draher (OH Bar 0074304)
Hans A. Nilges (OH Bar 0076017)
7034 Braucher Street, NW, Suite B
North Canton, Ohio 44720
Telephone:      330-470-4428
Facsimile:      330-754-1430
Email:  sdraher@ohlaborlaw.com
           hans@ohlaborlaw.com

Robi J. Baishnab (OH Bar 0086195)
Jeffrey J. Moyle (OH Bar 0084854)
1360 E 9th St., Suite 808
Cleveland, OH 44114
Telephone: (216) 230-2955
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com
           jmoyle@ohlaborlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Shannon M. Draher*
*Counsel for Plaintiffs*