IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT MOORE *on behalf of himself and all others similarly situated and* FRANK R. FEREZA, JR.,<br><br>*Plaintiffs,*<br><br>v.<br><br>CONSOL PENNSYLVANIA COAL COMPANY LLC,<br><br>*Defendant.* | Civil Action No. 2:23-cv-1991<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Pending before the Court are four interrelated motions regarding certification of a collective action claim under the Fair Labor Standards Act ("FLSA"): (1) Plaintiffs Robert Moore's and Frank R. Fereza, Jr.'s (collectively, "Plaintiffs") Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("Notice Motion") (ECF No. 37); (2) Defendant CONSOL Pennsylvania Coal Company LLC's ("Consol") Amended Motion for an Order Requiring Plaintiffs' Counsel to Cease and Desist from Improper Solicitations ("Cease and Desist Motion") (ECF No. 53); (3) Consol's Motion to Sustain Objections and Strike Declarations Submitted by Plaintiffs ("Motion to Strike") (ECF No. 60); and (4) Consol's Motion to Trifurcate the Proceedings, which is now a motion to bifurcate the proceedings ("Motion to Bifurcate") (ECF No. 28).[1] These motions turn on two main issues: (1) whether the Court will conditionally certify

---

[1] Defendants CONSOL Energy Inc. and CONSOL Pennsylvania Coal Company, LLC originally submitted a Motion to Trifurcate the Proceedings. (ECF No. 28). CONSOL Pennsylvania Coal Company, LLC filed a Motion to Convert the Pending Motion to Trifurcate the Proceedings to a

1

Plaintiffs' collective action claim under the FLSA and (2) whether Plaintiffs' counsel improperly solicited employees of Consol to the collective action without receiving conditional certification from the Court. For the following reasons, the Court will grant, in part, the Notice Motion, and deny the Cease and Desist Motion, Motion to Strike, and Motion to Bifurcate.

## I. FACTUAL BACKGROUND

Consol owns and operates three underground coal mines—Bailey, Harvey, and Enlow Fork—in Pennsylvania (collectively, "Pennsylvania Mines"). (ECF No. 32, p. 3). Plaintiffs are hourly, non-exempt underground coal miners who are employed by Consol. (*Id.* at p. 4). Plaintiffs allege that Consol violated the FLSA by failing to compensate them for their pre-shift and post-shift work, which requires them to work more than forty hours per workweek. (ECF No. 32, p. 4); (ECF No. 38, p. 1). Specifically, Plaintiffs claim this pre-shift and post-shift work, which includes "donning and doffing their safety clothing, gathering and returning their safety equipment, and gathering and returning their hand tools and other work equipment before and after their shifts," resulted in unpaid overtime violations under the FLSA. (ECF No. 38, p. 1). According to Plaintiffs, employees are required to wear personal protective equipment ("PPE")–including reflective clothing, helmets, metatarsal boots, ear plugs, safety glasses, and gloves–and carry safety equipment, including a tracking node, gas detector, radio, proximity detector, and self-rescuer. (ECF No. 32, p. 4). Additionally, Plaintiffs claim they are also required to retrieve hand tools and work equipment needed for their jobs before they begin their shifts. (ECF No. 32, p. 5).

---

Motion to Bifurcate the Proceedings (ECF No. 49) after Plaintiffs amended their complaint to no longer name CONSOL Energy Inc. as a defendant. CONSOL Energy Inc. was terminated as a defendant on January 2, 2024. Consequently, the Court will grant CONSOL Pennsylvania Coal Company, LLC's request and consider their motion as seeking the relief of bifurcation of the proceedings.

The PPE, safety equipment, and work tools are stored at Consol's coal mines. (*Id.*). Before each shift, Plaintiffs gather their PPE, safety equipment, and work tools and get dressed in their mandatory work attire (collectively, "pre-shift work"). (*Id.* at p. 6). At the end of each shift, they take off their work attire and return it to its proper storage location (collectively, "post-shift work"). (*Id.* at p. 7). Plaintiffs contend this pre-shift and post-shift work took approximately 30 minutes each day to complete, which resulted in unpaid overtime every week. (*Id.*).

On November 17, 2023, Plaintiff Robert Moore filed this Collective Action Complaint ("Complaint") on behalf of himself and all other employees similarly situated. (ECF No. 1). Plaintiffs ask the Court to authorize the issuance of notice to "all current and former hourly employees of [Consol] who engaged in underground mining … from November 17, 2020, to the present, and worked more than 40 hours in at least one workweek" (collectively, the "Potential Opt-In Members"). (ECF No. 38, p. 1).

Counsel for Plaintiffs admit that some of the information submitted in their Complaint came from an investigation they undertook starting in the middle of October 2023. (ECF No. 64, p. 2). Plaintiffs' counsel state that they conducted research on Consol and learned that the company maintains a principal place of business in Canonsburg, Pennsylvania, and owns several underground mines in the commonwealth. (*Id.*). As part of their investigation, Plaintiffs' counsel mailed letters dated November 8 and 9, 2023 ("Advertising Letters") to some Potential Opt-In Members. (*Id.*). On December 8, 2023, counsel for Consol demanded that Plaintiffs' counsel stop sending the Advertising Letters. (*Id.* at p. 3). Plaintiffs' counsel rejected the request. (*Id.*).

## II.   STANDARD OF REVIEW

Congress designed the FLSA "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to

3

secure for themselves a minimum subsistence wage." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by sub nom. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) (citation and internal quotation marks omitted). In this vein, the FLSA contains a "collective action mechanism" affording employees leave to bring an FLSA action on "behalf of himself . . . and other employees similarly situated." *Id.* (citation and internal quotation marks omitted). The collective action mechanism, however, prohibits an employee from being "a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . ." *Id.* (citation and internal quotation marks omitted).

Courts utilize a two-step certification analysis to decide whether employees "who purport to join a collective action are similarly situated" and can move their collective action lawsuit forward. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). The first step is referred to as conditional certification, the current posture of the instant case. *Id.* This step "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Walmart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).

To obtain conditional certification, "plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy [or practice] affecting all the collective members." *Meals v. Keane Frac GP LLC*, No. 16-1674, 2017 WL 2445199, at *3 (W.D. Pa. Jun. 6, 2017) (citation omitted); *see also Halle*, 842 F.3d at 224 ("Being 'similarly situated' ... means that one is subjected to some *common employer practice* that, if proved, would help demonstrate a violation of the FLSA.") (citation omitted and emphases added). Declarations bolster the merits of a motion for conditional certification, though they are not

required. *See Moore v. PNC Bank, N.A.*, No 12-1135, 2013 WL 2338251, at *6 (W.D. Pa. May 29, 2013) (quoting *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086, at *10 (W.D. Pa. Aug. 17, 2012)).

If the plaintiffs can satisfy their initial burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citation omitted). The "sole consequence" of conditional certification is the distribution of court-approved notices to potential similarly situated employees who may want to join the class action. *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp.*, 569 U.S. at 75). "Conditional certification" of the collective action is merely a term of art, because it "is neither necessary nor sufficient for the existence of a representative action under the FLSA." *Zavala*, 691 F.3d at 536 (citation omitted). "Conditional certification" is quite simply the exercise of the district court's power to facilitate notice to prospective opt-ins. *Id.*

The second step of the FLSA collective action process is more demanding. "[W]ith the benefit of discovery," the district court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Camesi v*, 729 F.3d at 243 (quoting *Symczyk*, 656 F.3d at 192). In determining whether individuals are in fact similarly situated at the second stage of the litigation, the district court must consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *2 (W.D. Pa. Dec. 20, 2011). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Symczyk*, 656 F.3d at 193 (citation omitted).

5

### III. ANALYSIS

The Court now turns to evaluate the merits of the four motions in turn.

**A. The Notice Motion will be granted in part and denied in part.**

**1. Conditional certification will be granted.**

Plaintiffs argue that Consol had a common policy of not paying Plaintiffs and other similarly situated employees for their pre-shift and post-shift work. (ECF No. 38, p. 6). Plaintiffs request that the Court authorize the issuance of notice to Potential Opt-In Members. (*Id.* at p. 1). Plaintiffs allege that they were similarly situated under 29 U.S.C. § 216(b) because all the underground coal miners who worked (or still work) at the Pennsylvania Mines were hourly, non-exempt employees that were not paid for their required pre-shift and post-shift work. (*Id.* at p. 6).

To support their request, Plaintiffs provided the Court with declarations from themselves and eleven other current and former coal miners who worked at the Pennsylvania Mines. (*Id.*). Within the thirteen declarations, Plaintiffs and the Potential Opt-In Members state that they worked as an hourly, non-exempt coal mining employees at one of the Pennsylvania Mines. (*See* ECF No. 38-1, p. 1). Each declaration attests that Consol required these coal miners to gather and don safety equipment before shiftwork started. (*See id.* at p. 2). After shiftwork ended, each declaration states that coal miners had to remove their safety equipment and return it to storage. (*See id.* at p. 3). Each declaration also provides that Consol required the coal miners to gather work-related equipment and tools before the start of shifts and return it to storge when their shifts ended. (*See id.* at pp. 2–3). Furthermore, each declaration states that Consol mandated underground coal miners to be fully dressed in PPE before the start of their shifts and that the nature of their work required them to get dressed at work. (*See id.*).

6

The crux of the parties' dispute boils down to whether the content of Plaintiffs' declarations is sufficient to grant a conditional certification. Plaintiffs have directed the Court's attention to three cases that they believe support their request for conditional certification: *Brewer v. All. Coal, LLC*, No. 20-41-DLB-EBA, 2021 WL 3057379 (E.D. Ky. July 20, 2021); *Branson v. All. Coal, LLC*, No. 4:19-CV-00155-JHM, 2021 WL 1550571 (W.D. Ky. April 20, 2021); and *Cates v. All. Coal, LLC*, No. 21-CV-377-SMY, 2022 WL 4485477 (S.D. Ill. Sept. 27, 2022). These cases involved coal miners who brought collective actions under the FLSA against their employers for failing to compensate them for pre-shift and post-shift activities.[2] *Brewer*, 2021 WL 3057379, at *1–2; *Branson*, 2021 WL 1550571, at *1–2; *Cates*, 2022 WL 4485477, at *1–2. Plaintiffs argue that, in all three cases, the district courts granted the plaintiffs' motion for notice on less evidence than which the Plaintiffs provided here. (ECF No. 38, p. 7). In those cases, each district court found that the plaintiffs' multiple declarations made the requisite modest factual showing that their employers employed common practices that required coal miners to work before and after their scheduled shifts without pay or overtime. *Brewer*, 2021 WL 3057379, at *2 (finding that plaintiff made the requisite "modest factual showing" based on the allegations and five supporting declarations); *Branson*, 2021 WL 1550571, at *5 (holding that plaintiffs made a "modest factual showing," "as evidenced by the[ir] ten affidavits"); *Cates*, 2022 WL 4485477, at *2 (ruling that two declarations from coal miners were "sufficient to satisfy the 'similarly situated requirement.'"). As a result, each district court granted conditional certification as to all coal

---

[2] Although all three cases involved disputes over unpaid compensation for pre-shift and post-shift work, the allegations of each case varied slightly. *Brewer* and *Cates* dealt with coal miners who alleged that they were not paid for the time they spent donning protective clothing and mining gear, such as PPE, safety equipment, and work tools. *Brewer*, 2021 WL 3057379, at *2; *Cates*, 2022 WL 4485477, at *2. In contrast, *Branson* only involved a dispute over time donning and doffing protective clothing and safety equipment. *Branson*, 2021 WL 1550571, at *5. There were no allegations concerning work tools. *Id.* at 5–6.

miners. *Brewer*, 2021 WL 3057379, at *4; *Branson*, 2021 WL 1550571, at *7; *Cates*, 2022 WL 4485477, at *3. Plaintiffs urge the Court to do the same here. (ECF No. 38, pp. 6–7).

Consol raises the following three objections: (1) Plaintiffs have not established a common unlawful practice; (2) Plaintiffs cannot meet their burden of showing that the potential collective action members are similarly situated; and (3) Plaintiffs' proposed collective action would be unmanageable for the Court. (ECF No. 62, pp. 12, 15, 20). The Court finds none of these objections compelling.

As to Consol's first objection, it argues that the FLSA distinguishes between "principal" and "preliminary" or "postliminary" activities. (ECF No. 62, p. 13). According to Consol, preliminary or postliminary activities are not compensable unless the law, employer, or nature of the work requires them to be performed on the employer's premises. (*Id.* at pp. 13–14). Against this backdrop, Consol argues that Plaintiffs have not alleged Consol implemented a common unlawful policy that required them to don and doff PPE at the worksite.[3] (*Id.* at p. 14).

---

[3] Consol argues that *Branson* and *Cates* can be differentiated from the instant case on this fact as well. (ECF No. 62, p. 13 n.4). Consol avers that the coal mining declarants in *Branson* attested that their employer issued a new policy requiring them to arrive fifteen minutes before their shift started, so that they could change into their mining gear, but did not pay them until the start of their shift. (*Id.*). Likewise, Plaintiffs contend the declarants in *Cates* also attested that their employer required them to perform pre-shift and post-shift work even though they were not paid until the official start of their shift. (*Id.*). Consol alleges that in the instant case, unlike *Branson* and *Cates*, coal miners "have no reason to believe they have to do any preparation or post-shift activities in a particular order or on site – nor do they." (*Id.*). But this assertion directly contradicts the content of Plaintiffs' declarations. The declarations attest that the safety equipment and work equipment must be collected before the start of scheduled shifts. (ECF No. 38-1, p. 2). They also attest that Consol "required that, at the scheduled shift start time, underground coal mining employees … be fully dressed in all" their PPE. (*Id.*). The Court does not resolve factual disputes or determine the merits of Plaintiffs' claims at this posture. *Archer v. Defs., Inc.*, No. 18-470-RGA, 2018 WL 5962470, at *3 (D. Del. Nov. 14, 2018) (citing *Charles v. Progressions Behavioral Health Servs., Inc.*, No. 17-2439, 2018 WL 4924169, at *5 (E.D. Pa. Oct. 9, 2018) and *Bowser v. Empyrean Servs., LLC*, 2:16cv482, 324 F.R.D. 346, 353 (W.D. Pa. March 30, 2018)).

8

None of Plaintiffs' declarations attest that Consol required its employees to get changed at the worksite. Instead, the declarations attest that Consol mandated underground coal mining employees to be fully dressed in PPE at their scheduled shift start time. (ECF No. 38-1, p. 2). They also attest that the nature of the work, coal mining, compelled them to change into their safety clothing at work to prevent contaminating their vehicles and homes with hazardous coal dust. (*Id.*). Plaintiffs seemingly claim that the nature of the work and Consol's requirement for employees to be dressed in PPE, before the start of their shift, resulted in an unlawful employment practice. Considering the potential hazards described in these declarations, the Court cannot conclude that the nature of the work itself does not require donning and doffing PPE on Consol's premises. Further, all thirteen declarations provide the Court with enough evidentiary support for it to hold that Plaintiffs have demonstrated beyond mere speculation that they and others were subject to the same shift start-time requirements and work conditions and are similarly situated.

As to Consol's second objection, it asserts that Plaintiffs' experiences are individualized and do not reflect the experiences of the proposed collective action. (ECF No. 62, p. 15). It argues that Plaintiffs' declarations fail to account for the different types of positions that exist for the employees who work underground at Consol's mines. (*Id.* at 16). Consol claims that the different types of coal miners have diverse pre-shift and post-shift activities, as well as diverging job requirements for shift-arrival times, shift scheduling, and procedures for gathering and returning safety equipment. (*Id.* at 15).

The Court disagrees. "Being similarly situated ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538. "The court does not consider the merits of the dispute at this time, and the plaintiff must only demonstrate that the potential class members' positions are similar, not

9

identical, to his own." *Ornelas v. Hooper Holmes, Inc.*, No. 12-cv-3106, 2014 WL 7051868, at *2 (D.N.J. Dec. 12, 2014) (citation omitted); *see also Archer*, 2018 WL 5962470, at *3 ("[C]ourts in this Circuit regularly resolve issues of individualized inquiries at stage two of the certification process."). While the Court acknowledges that Plaintiffs' showing that they and the declarants are similarly situated is thin, the declarations attest that Plaintiffs and the other Potential Opt-In Members operated on similar hourly-shift schedules, worked in similar conditions, and were subject to the same compensation and health, safety, and environmental policies. (ECF No. 38-1, pp. 1–3). Plaintiffs could have provided more detail regarding individual job responsibilities,[4] but their thirteen declarations provide that Consol's pay and health, safety, and environmental policies, as well as the working conditions, applied to all hourly underground coal mining employees at the Pennsylvania Mines. (*Id.*). Under the FLSA's two-step certification analysis, this factual support

---

[4] The conditional certifications in *Brewer, Branson, and Cates* did not limit their applicability to a certain type of coal miner. *Brewer*, 2021 WL 3057379, at *5; *Branson*, 2021 WL 1550571, at *5, *7; *Cates*, 2022 WL 4485477, at *1. In *Brewer* and *Branson*, however, the declarants specified which type of coal miner they were. *Branson*, 2021 WL 1550571, at *5; *Brewer*, 2021 WL 3057379, at *2. In *Cates*, the declarants did not. Similar to *Cates*, none of the declarants in the instant case disclosed which type of coal miner they are in their declarations. In evaluating whether Plaintiffs' request is overbroad, the Court decides to follow the precedent employed in *Cates*. In that case, the district court held that conditional certification was warranted although the plaintiffs requested conditional certification for a collective action that consisted of coal miners from "two different underground coal mines, utilizing two different methods of underground coal mining, and [] two different above-ground coal preparation plants." *Cates*, 2022 WL 4485477, at *2. In reaching its decision, the district court reasoned that "[t]he question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Cates*, 2022 WL 4485477, at *2 (quoting *Davenport v. Charter Commc'ns, LLC*, No. 4:12CV00007, 2015 WL 164001, at *6 (E.D. Mo. Jan. 13, 2015)) (internal quotation marks omitted). Here, all thirteen declarations attest that Consol did not pay its underground coal mining employees for the pre-shift and post-shift work. (ECF No. 38-1, p. 1–3). While Plaintiffs, declarants, and Potential Opt-In Members may be different types of coal miners, the declarations provided by Plaintiffs support a finding that all underground coal miners at the Pennsylvania mines were subject to the same pay and health, safety, and environmental policies. At this early stage, the Court holds that differences among the Plaintiffs do not outweigh the similarities to which they allege they were subjected.

is sufficient for Plaintiffs to meet their lenient step one burden of showing they are similarly situated.[5]

In conjunction with their second objection that each coal miner has diverging pre-shift and post-shift work, Consol contends in its third objection that the proposed collective action would be unmanageable for the Court. (ECF No. 62, p. 20). In short, Consol argues that if the case proceeds to a collective action, the Court will be required to conduct a cumbersome number of individualized assessments to determine whether each Potential Opt-In Member can be properly classified as part of the collective. (*Id.* at p. 21). At the outset, Consol contends that the Court would have to consider the following factual inquiries for each Potential Opt-In Member: (1) "whether each employee was required to get dressed on-site or work location;" (2) "whether any hours for which a worker was not compensated were compensable as integral and indispensable to his or her principal work activity;" (3) "whether any individual worked compensable time that was not compensated;" (4) "whether each worker performed compensable work outside of his or her recorded times;" (5) "whether each employee followed the employer's reasonable process for reporting uncompensated time;" and (6) "whether the employer knew or should have known that the individual was working time for which he or she was not compensated." (*Id.* at pp. 22–23).

The Court recognizes that it *could* ultimately be required to make some individualized determinations as to whether Consol failed to compensate underground coal miners for their pre-

---

[5] In their second objection, Consol presents factual support that rebuts Plaintiffs' claims, including one declaration that attests workers can clock in before changing into their PPE. (ECF No. 62, p. 17). The Court, however, rejects these arguments on their face. "[A]t the conditional certification stage, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff[s'] claims." *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 605 (E.D. Pa. 2019) (citation omitted); *see also Bonds v. GMS Mine Repair & Maint., Inc.*, No. 2:13–1217, 2014 WL 2957394, at *4 (W.D. Pa. July 1, 2014) ("As a threshold matter, the Court notes that it does not consider the merits of the claim(s), decide credibility issues or resolve factual disputes at this stage of the case.") (citations omitted).

shift and post-shift work. Consol's arguments, however, are best addressed at the second stage of the FLSA collective action certification. *See Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 15-482, 2016 WL 3077936, at *9 (E.D. Pa. June 1, 2016) ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process." (quoting *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010)).[6]

All thirteen of Plaintiffs' declarations attested that Consol did not compensate the underground coal miners for their pre-shift and post-shift work, which caused them to not be paid for overtime work. In light of Plaintiffs' evidentiary display, the Court holds that Plaintiffs have met their modest burden of showing that they and others may be similarly situated.[7] Though Plaintiffs' showing is thin, the Court grants Plaintiffs' request for the issuance of notice, finding that Plaintiffs have demonstrated beyond mere speculation that they and others are similarly situated for the purposes of the first step in the FLSA collective action process.

---

[6] The Court declines to follow the case provided by Consol, *Bond v. Nat'l City Bank of Pa.*, No. 05CV0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006). (ECF No. 62, p. 21). *Bond* is distinguishable because the named plaintiffs in that case alleged varying circumstances at each branch and individual branch policies that applied to each prospective plaintiff. *Bond*, 2006 WL 1744474, *4. That is not the case here. None of the declarations suggest that the Pennsylvania Mines adhered to different pay, health, safety, and environmental policies. Contrarily, the declarations attest the underground coal mining employees were subject to the same policies. (ECF No. 38-1, pp. 1–3).

[7] Nothing in this memorandum opinion should be construed to be adjudicating the actual merits of Plaintiffs' claims.

### 2. Plaintiffs' Proposed Notice and Consent to Join Form will be denied.

Plaintiffs request that the Court approve their proposed Notice and Consent to Join form and authorize issuance of notice by U.S. mail, email, and text message. (ECF No. 38, p. 9). District courts have the discretion to decide whether and how such notices should be implemented. *Sperling v. Hoffman-La-Roche Inc.*, 862 F.2d 439, 447 (3d Cir. 1988). Accordingly, "[d]istrict courts may properly oversee [the notice] process in a management role." *Rood v. R&R Express, Inc.*, No. 2:17-cv-1223, 2019 WL 5422945, at *4 (W.D. Pa. Oct. 23, 2019) (citation and internal quotation marks omitted). "[D]isputes about the form and content of any notice" are, however, "best resolved by the parties." *Id.*; *see also Tupitza v. Roadhouse Mgmt. Corp.*, No. 1:20-cv-2, 2020 WL 6268631, at *7 (W.D. Pa. Oct. 21, 2020) (Stickman, J.) (requiring plaintiffs and defendant to meet and confer, and propose joint notice proposal).

The Court rejects Plaintiffs' request. The parties are optimally situated to reconcile their differences over form and dissemination method. *See Tupitza*, 2020 WL 6268631, at *7. As the Court held in *Tupitza*, the parties will be ordered to meet and confer to discuss the proposed notice, consent form, and methods of distribution to Potential Opt-In Members and submit a joint proposal to the Court within thirty days. *See id.* Although the Court *strongly* encourages otherwise,[8] the parties are permitted to file a motion to resolve the remaining notice disputes should they fail to find common ground.

### B. Consol's Motion to Strike will be denied.

Consol requests that the Court strike the thirteen declarations that Plaintiffs used to support their request for conditional certification. (ECF No. 61, p. 1). It bases its request on two grounds.

---

[8] Each party "has an obligation not to demand the moon when the stars are sufficient." *Tupitza*, 2020 WL 6268631, at *7 (citation omitted).

(*Id.* at pp. 1–2). First, Consol claims the near identicality of the declarations suggest that they were prepared by Plaintiffs' counsel without any meaningful factual input from each declarant. (*Id.*). Second, Consol asserts that the declarations only contain speculative and conclusory assertions as to the experiences of workers other than the declarants themselves. (*Id.* at p. 2). Consol's arguments are unpersuasive to the Court.

First, Consol fails to provide any evidentiary support for its contention that the identical nature of Plaintiffs' declarations suggests that they were "prepared by counsel without meaningful factual input from the individual declarants." (*Id.* at p. 10). Instead, it supplies the Court with case law from outside this circuit to support their argument that the Court should find that Plaintiffs' declarations have "dubious value." (*Id.* at p. 9). Within this circuit, however, district courts have not disregarded "cookie-cutter" and "boilerplate-like" declarations nor, at this stage, found them to be additional evidence of a common policy or practice affecting the proposed collective. *Dunkel v. Warrior Energy Servs., Inc.*, No. 2:23-cv-00695, 304 F.R.D. 193, 201 (W.D. Pa. Dec. 23, 2014); *see also Tompkins v. Farmers Ins. Exch.*, No. 5:14-3737, 2015 WL 4931605, at *4 (E.D. Pa. Aug. 18, 2015); *Clark v. Intelenet Am., LLC*, No. 18-14052, 2020 WL 831127, at *3 n.2 (D.N.J. Feb. 19, 2020).

Second, the Court does not find Plaintiffs' declarations to be speculative or conclusory but rather based on each declarant's knowledge and experiences. The thirteen declarations all attest, the "experiences that I describe in this declaration are not only based on my own personal experiences but are also consistent with the experiences of Defendant's other underground coal mining employees. I know that their experiences are like mine because I work alongside them, and I observe them performing similar activities as me." (ECF No. 38-1, p. 3). Declarations declaring personal knowledge that other coworkers were subjected to similar employer practices

may be relied upon at this stage. *Viscomi v. Diner*, No. 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) ("Courts routinely certify conditional collective actions based on the plaintiff's declarations declaring they have personal knowledge that other coworkers were subjected to similar employer practices.") (alteration in original) (citation and internal quotation marks omitted). The Motion to Strike will be denied.

### C. Plaintiffs' Cease and Desist Motion will be denied.

Consol asks the Court to direct Plaintiffs to immediately cease and desist from improperly soliciting Potential Opt-In Members without receiving conditional certification from the Court. District courts have the discretion to authorize the sending of notice. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). In so doing, district courts can "manage [] litigation and curb overly burdensome lawsuits." *Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 345 (E.D. Pa. 2020) (citing *Hoffmann-La Roche, Inc.*, 493 U.S. at 172 ("Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.")). "Outside the context of a notice process supervised by the Court, plaintiffs' attorneys are not permitted unilaterally to send unsolicited *notices* regarding the case to putative FLSA class members not yet parties to an action conditionally certified by the Court." *Bouder v. Prudential Fin., Inc.*, No. 06-cv-4359, 2007 WL 3396303, at *2 (D.N.J. Nov. 8, 2007) (emphasis added). But *precertification communication*s with potential collective members, however, are permitted "unless the communication contradicts a court notice, is misleading, or improper." *Cowan v. Nationwide Mut. Ins.*, No. 2:19-cv-1225, 2019 WL 4667497, at *3 (S.D. Ohio Sept. 25, 2019) (emphases added) (citation omitted) ).

Consol asserts that Plaintiffs' Advertising Letters to Potential Opt-In Members constitute a *de facto* notice of the pending FLSA collective action. (ECF No. 54, p. 7) (emphasis added).

15

Yet, Consol does not explain why they constitute *de facto* notice. (*See id.*) (emphasis added). Citing *Bouder*, Consol instead argues the other side is not permitted to unilaterally send unsolicited notices to putative FLSA class members not yet parties to an action conditionally certified by the Court. (*Id.*). Consol also argues that the letters are misleading because they misstate the purpose for which Plaintiffs' counsel sent it, as Plaintiffs were "clearly preparing to file the Complaint" at the same time. (*Id.* at p. 8). In turn, Consol requests that the Court issue an order prohibiting Plaintiffs from continued use of these solicitations and striking the consent-to-join forms submitted by the putative collective action members who chose to opt-in. (*Id.* at pp. 5, 8).

Plaintiffs respond that the Advertising Letters do not constitute *de facto* notice nor are they misleading. (ECF No. 64, pp. 9, 11–12). Plaintiffs argue that "precertification communications with potential opt-in plaintiffs are permissible in FLSA collective actions unless the communication 'contradicts a court notice, is misleading or improper.'" (*Id.* at p. 12) (quoting *Cowan*, 2019 WL 4667497, at *3).

The Court agrees with Plaintiffs. The Advertising Letters do not constitute *de facto* notice nor are they misleading. The Advertising Letters do not inform the addressee of any legal action or a right to opt-in. They merely explain that Plaintiffs' counsel is investigating Consol for a "potential unpaid overtime compensation claim." (ECF No. 54, p. 6). Since the Advertising Letters do not constitute *de facto* notice, Plaintiffs did not usurp the Court's authority to supervise the notice procedure. Parties do not need court-approval to locate other "similarly situated" persons. *Taylor v. CompUSA, Inc.*, No. 1:04CV718, 2004 WL 1660939, at *3 (N.D. Ga. June 29, 2004)) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 949 (M.D. Fl. 1994)).

Consol fails to demonstrate how the Advertising Letters are misleading. It provides no evidence to support its contention that the purpose of the Advertising Letters was not to investigate

16

Consol since Plaintiffs filed this lawsuit nine days after they sent the Advertising Letters. Accusations without more is not enough.

Consol's Cease and Desist motion fails for these reasons.

**D. Consol's Motion to Bifurcate will be denied.**

Consol petitions the Court to bifurcate the proceedings into two phases: (1) a certification phase followed by (2) a merits phase. (ECF No. 49, p. 2). Federal Rule of Civil Procedure 42(b) vests the Court discretion in deciding whether a bifurcation of trial is appropriate. FED R. CIV. P. 42(b); *see also Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992). "The moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." *EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014) (alteration in original) (citation omitted). In deciding whether to bifurcate, the Court must balance the competing interests of the parties. *See Craker v. State Farm Mut. Auto. Ins.*, No. 11-0225, 2021 WL 3204214, at *1 (W.D. Pa. Aug. 3, 2012) (citation omitted).

Through its Motion to Bifurcate, Consol is requesting a stay of discovery related to the merits of Plaintiffs' individual claims, referred to by Consol as the "Merits Phase," until after the second step of the FLSA collective action process. (ECF No. 28, p. 2). Consol avers that the Court would reach a decision on the issue of conditional certification more expeditiously. (*Id.* at p. 17). It argues that proceeding with merits discovery concurrently with discovery related to conditional certification would likely delay the parties' briefing on conditional certification issues. (*Id.*). Additionally, Consol asserts that a stay on the merits issues until after conditional certification is resolved would allow the Court and the parties to better inform themselves of this case's scope and make it easier to determine the limits of discovery on the merits. (*Id.*). As a

17

result, Consol infers that the time and expense of discovery for a potential merits phase would be substantially less. (*Id.*).

The Court disagrees with Consol and holds that bifurcation is unwarranted. Consol's argument that bifurcation would allow the parties to better inform themselves of the case's scope is now moot. As noted above, the Court is granting Plaintiffs' request for conditional certification. The scope of the case is defined.

As to judicial economy, typically, the Court considers and evaluates the merits of claims at the second step of the FLSA collective action process. *See Johnston v. Titan Logistics & Res., LLC*, No. 17-1617, 2019 WL 4345725, at *7 (W.D. Pa. Sept. 12, 2019). At that stage, the Court has the benefit of discovery before making "conclusive determination[s] as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243 (quoting *Symczyk v*, 656 F.3d at 192, *overruled on other grounds by sub nom. Genesis Healthcare Corp.*).

Bifurcating the proceedings would likely cause duplicative depositions and document review, which would significantly increase the parties' costs. These cost increases would likely outweigh the reduced expenses for a merit-phase discovery that Consol alleges would follow with a bifurcated approach. Deposing Plaintiffs, Potential Opt-In Members, and other witnesses twice would also inconvenience a significant number of individuals. Duplicative discovery could also prejudice Plaintiffs with substantially more discovery costs associated with duplicative efforts. Further, Plaintiffs and Potential Opt-In Members would twice be forced to accommodate deposition scheduling around their personal and professional commitments.

The Court does not find bifurcation to be appropriate; the Motion to Bifurcate will be denied. Discovery deadlines will be set at the initial case management conference on April 2, 2024.

### IV. CONCLUSION

For these reasons, by Order of Court to follow, the Court will grant, in part, the Notice Motion, and it will deny the Cease and Desist Motion, Motion to Strike, and Motion to Bifurcate.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 3/22/24